Martin v. Lennon.

RICHARD MARTIN

*vs.*

JOHN G. LENNON, impleaded, &c.

A being indebted to B upon sundry notes of hand, all drawing interest at more than seven per cent per annum after due; upon a settlement and accounting together in respect of the indebtedness of A to B, computed the amount of principal and interest due at the date of such settlement upon said notes, which were all over due, [including a sum of $275 paid by B for A,] at the sum of $8,215. In arriving at this amount the interest upon said notes was computed according to their terms, but within the express literal terms of the contract. A then admitted said sum to be due from him to B, and voluntarily gave B his promissory notes therefor. *Held*, that A was liable for the face of said notes, and is entitled to no deduction on account of there being included therein a greater rate of interest than 7 per cent per annum after maturity upon the principal of the old notes aforesaid.

A mortgagee who has been in the receipt of the rents and profits, is not entitled under *Gen. Stat.*, ch. 11, sec. 153 to interest at 12 per cent per annum upon taxes paid by him, but the mortgagor may redeem upon the payment of interest at 7 per cent per annum.

Martin v. Lennon.

In the year 1855, the defendant conveyed to the plaintiff certain lands in Hennepin county by warranty deed, absolute in form but intended as a security for a loan then made, and further loans to be made, by plaintiff to defendant. For the loans then and subsequently made the defendant gave to the plaintiff his promissory notes bearing various rates of interest, but all providing for interest after maturity at upwards of two per cent. per month. On the first February, 1858, an accounting and settlement was had between the parties. The amount due on defendant's notes, all of which were long over due, was computed according to the terms of the notes, and to this amount was added the sum of $275.79 and interest, paid by plaintiff for a certain judgment against the defendant. The total amount found to be due plaintiff from defendant on this accounting was $8,215, and for this amount the defendant, on said 1st February, 1858, gave to the plaintiff his promissory notes payable six months thereafter with interest at three per cent. per month, till due and at five per cent. per month after due till paid. At the same time the defendant and his wife executed to the plaintiff a warranty deed of the land before mentioned, and the plaintiff gave to the defendant a bond conditioned for the reconveyance of said land on payment by defendant of said sum of $8,215, with interest at three per cent. per month, within six months from the date of the bond.

In the spring of 1859, the plaintiff entered into possession of the said land, and thereafter paid all taxes then due and afterwards accruing, made certain necessary repairs and improvements, and received the rents and profits of the premises.

The debt of defendant to plaintiff remaining wholly unpaid, the plaintiff brought this action in the district court for Hennepin county, praying that his bond to defendant might be adjudged null and void, that defendant's deeds might be

Martin v. Lennon.

adjudged to be absolute conveyances, that defendant might be foreclosed of all claim upon the land, and for general relief.

Upon a trial by the court, the judge found the foregoing facts, and also the amount of principal and interest then due on the notes, the amounts paid by plaintiff for taxes and for necessary repairs and improvements, and the amount of rents and profits received by the plaintiff. In arriving at the balance due for such payments and receipts the judge applied the receipts and rents and profits for each year to the payment of the taxes and expenses of the same year, when sufficient, and allowed interest from year to year upon the balance of taxes not thus cancelled at the rate of twelve per cent., and on the other hand upon the balance of receipts or rents at the rate of seven per cent. He also allowed the plaintiff a compensation for services which had largely increased the productiveness of the premises. As a result of the accounting the judge found that, after deducting from the sum of the rents and interest thereon, the amount of taxes, repairs, expenses and personal services, and interest, there was a balance in defendant's favor, which balance he deducted from the amount due on the rents, leaving due from defendant to plaintiff the sum of $16,682.09.

As conclusions of law the judge found that the transaction of February 1, 1859, was in effect a mortgage; that the defendant was liable for the principal sum and interest of the notes given on that day, notwithstanding that such principal sum was partly made up of interest, at a greater rate than seven per cent. after maturity, on the old notes for which the notes in suit were given; and that plaintiff was entitled to judgment for a strict foreclosure of the mortgage, unless the defendant should pay the said sum of $16,682.09, with interest at seven per cent., within one year from the date of the judgment.

Judgment was entered in accordance with the findings of the judge, and the defendant appeals.

D. A. SECOMBE, for Appellant.

The court below erred in allowing twelve per cent. interest on the payments of taxes by the mortgagee, (*Gen. Stat.*, *ch.* 11, *sec.* 152,) and in not allowing the defendant's claim for reduction on account of illegal interest included in the notes of Febuary 1, 1858. (*Whittacre vs. Fuller*, 5 *Minn.* 518.)

I. ATWATER and LOCHREN & McNAIR, for Respondent.

I. The court below did not err in allowing respondent twelve per cent. interest on taxes paid by him. (*Gen. Stat. p.* 189, *sec.* 153.)

Besides, the court had clearly the right to impose this condition on defendant asking to be relieved from his default. (*Drew vs. Smith*, 7 *Minn.* 301.)

II. Nor did the court err in finding that the parties were concluded by the agreement of February 1st, 1858, when the new note and bond for deed was given, and in computing interest on that note according to its terms.

*Keough vs. McNitt*, 6 *Minn.* 513 ; *Mills vs. Kellogg*, 7 *Minn.* 469; *Nutting vs. McCutcheon*, 5 *Minn.*, 382 ; *Goener vs. Sohroeder*, 18 *Minn.* 66.

III. The defendant seeks to set aside a voluntary agreement entered into between the parties, executed by the giving a note and deed and taking back a bond from respondent. If in any case this can be done, it is only by proper allegations of fraud, mistake, surprise, &c. In this case the answer contains no allegations authorizing the court to change the contract in whole or in part.

*Slee vs. Bloom*, 20 *Johns.* 669; 2 *Johns. Ch.* 209 ; *Leacroft vs.*

Martin v. Lennon.

*Dempsey*, 15 *Wend.* 83 ; *Wilde vs. Jenkins*, 4 *Paige*, 481 ; *Bruen vs. Hone*, 2 *Barb.* 586.

*By the Court.*—RIPLEY, CH. J.—With respect to the principal point raised on this appeal the case is briefly this : The defendant being indebted to the plaintiff upon sundry notes of hand, all drawing interest at more than seven per cent. per annum after due, upon a settlement and accounting together in respect of the indebtedness of defendant to plaintiff, on the 1st February, 1858, computed the amount of principal and interest then due upon said notes, which were all over due, with the sum of $275.79 and interest therefor paid by plaintiff for defendant, at the sum of $8,215. In arriving at this amount, the interest upon said several notes was computed according to their terms, but within the express literal terms of the contract. The defendant then admitted said sum of $8,215 to be due from him to the plaintiff, and he then voluntarily gave therefor his four promissory notes, payable in six months thereafter with interest at the rate of three per cent. a month. At the same time, and as a part of the same transaction, he conveyed to plaintiff the land in the complaint described, and received from him a bond in the sum of $10,000,conditioned for a re-conveyance thereof upon payment of said $8,215 in six months with interest at three per cent. a month.

It is apparent, and is not disputed, that this deed and bond together were meant to be and constituted a mortgage to secure the notes.

Under the general prayer for relief the court below has adjudged the plaintiff entitled to judgment for a strict foreclosure of this mortgage, and that the defendant is liable for the face of said notes and interest, and is entitled to no deduction on account of there being included in the said notes a

greater rate of interest than seven per cent. upon the principal of the old notes and demands aforesaid after maturity.

To the extent of that excess, however, the defendant contends that there was a want of consideration for said notes.

If that be so, they are *pro tunto* a nullity, and he is entitled to the deduction he claims.

We think, however, that according to the doctrine heretofore laid down by this court with respect to such interest, we perceive in the facts of this case, a good consideration for the defendant's express promise to pay it in these notes contained.

In the first place, it is an entire mistake, as has been explicitly held, to speak of it as *illegal* interest.

It cannot be said that the taking of interest beyond seven per cent. per annum is contrary to the spirit and policy of the law, where the statute expressly authorizes it to be done.

*Nutting v. McCutcheon,* 5 *Minn.* 389.

And it is evident, both on principle and the authority of that case, that it no more offends the law to pay and receive such interest as compensation for the use of money in the past, without any previous agreement therefor, than to agree to do so as compensation for the use of money for a time yet to come.

If, however, it is not illegal so to pay and receive such interest it cannot be illegal to agree to do it.

But the court, in the interest decisions, so-called, were of opinion that an agreement in a note to pay a greater rate of interest than seven per cent. per annum, after maturity, could not be regarded as a contract to pay interest, strictly speaking, but was an attempt of the parties to liquidate the damages in cases of a failure to perform the contract; that the law fixed the rate of damages in breaches of such contracts at seven per cent. per annum; that when the damages are susceptible of proof, a stipulation for a certain amount of damages

Martin v. Lennon.

will be held to be a penalty to secure the damages actually sustained, which in the case of such contracts are fixed by law as aforesaid. *Mason et al. v. Craig et al.* 2 *Minn.* 350; *Talcott v. Marston*, 3 *Minn.* 339. Such contract, however, is no more void than the penal clause in a bond is void. It is just as binding on the promissor at law. Until relieved against it is valid, and it can only be relieved against upon application by the debtor to a court of equity therefor. It is voidable, say the court, at his *option;* but that option, it is also held, lies in his choosing to invoke the equitable powers of the court to restrain his creditors from recovering more than the damage actually sustained. In that one case, therefore, and in that only, can he avoid his contract. *Bidwell v. Whitney,* 4 *Minn·* 76 ; *Mills v. Kellogg*, 7 *Minn.* 469.

But since it is simply because there is no redress at law against such exactions that a court of equity interferes when called upon, and relieves unfortunate debtors who by their own acts have incurred penalties, which the creditor is about to enforce against them, (*Bidwell v. Whitney, supra,*) it necessarily followed, and so the court held in that and the other cases which followed it, that the debtor might waive his right to invoke such interposition. *Culbertson v. Lennon, 4 Minn.* 51; *Nutting v. McCutcheon, 5 Minn.* 389; *Mills v. Kellogg*, 7 · *Minn.* 469 ; *Allen v. Jones,* 8 *Minn.* 202.

His contract was valid, until he exercised his option to apply to a court of equity for relief; but after waiver, he has no longer the right to apply for such relief: he has waived it and it is gone. His contract is thenceforth valid *absolutely*. It may be enforced against him at law, and equity will not interfere, for there is no principle better settled than that a party may waive rules of law intended for his benefit and protection. *Bonner v. Wilkinson,* 5 *B. & Ald.* 606.

An analagous case is that of an endorser of a negotiable

promissory note, whose undertaking is only to pay it in case the maker does not, and he has due notice of default. Yet if, after he is discharged for want of due notice of dishonor, he, with full knowledge of the facts, expressly promises to pay the note, he is liable. *Edw. on Bills and Notes*, 651; *Sigerson v. Mathews*, 20 *Howard*, 496; *Yeager v. Farwell*, 13 *Wallace*, 65.

The facts in the present case unquestionably amount to such waiver. The notes had been long over due, and for a period during which it is perfectly notorious that money commanded very high rates of interest in this state; the parties meet and the debtor settles the amount of principal and interest due by giving these notes into which the several notes and claims held by plaintiff are consolidated. The defendant admits that the said sum is due from him to plaintiff, and voluntarily makes and gives said notes.

Now, what is the principle on which it is held that, on proof of a promise by the endorser, with knowledge that he was not liable on the bill or note, the holder may recover?

It is not that the endorser is bound by the promise as matter of contract, for it wants consideration. It is a promise to pay what he is not liable to pay. But it is on the ground that the promise amounts to a waiver of the objection that the proper steps have not been taken to charge the endorser. *Edwards on Bills*, p. 654; *Tibbetts v. Dowd*, 23 *Wend.* 379; 3 *Kent's Com.* 5 ed. p. 113.

In the case at bar, there is a liability at law resting on the debtor. If he chooses, he may be relieved from it through the interposition of a court of equity.

If he admits that the debt is just, and expressly promises to pay it, where is the injustice in holding him to his promise? Has he not made his choice not to ask that interposition of a court of equity? If one is sued at law on a note of this

Martin v. Lennon.

description, and suffers judgment to go against him for the full amount, it is a waiver of his right to such interposition, unless the debtor can make out a case of mistake, surprise, or excusable neglect.

Suppose when thus sued he interposes this equity by answer, and afterwards, and before judgment, he admits in open court that the full sum is due, and expressly stipulates that judgment shall go against him therefor.

Could he be heard afterwards to insist on his answer?

There is no difference in principle between such an admission and promise made after suit commenced, and a like admission and promise made before action brought. They are both equally operative as a waiver of defendant's right to seek relief.

We have not overlooked the case of *Whittacre v. Fuller*, 5 *Minn.* 508, in this connection. On the point now under consideration that case is undoubtedly opposed to our conclusion, for it holds, in respect of interest of the character in question, and which could not have been collected in an action if a defense were interposed, that the obligation on the part of the promissor is rendered no more binding by his giving his note for it, unless it appears that it was given and received in payment of it. But we have not thought that we ought to be bound by that case. Its reasoning on the point is unsatisfactory, to say the least. Its conclusion, so far as it bears upon the case now before us, is, in our judgment, at variance with clear principles of law applicable thereto; while that to which we have come, seems to us the necessary result of the doctrines enunciated in the other decisions of the court, to which we have referred.

The court below also held that the mortgagee was entitled to interest at 12 per cent. per annum on taxes paid by him.

This was an error.

*Ch.* 6 *of Laws of* 1862, *p.* 40, re-enacting *Rev. St., ch.* 9, *sec.* 101; *Comp. St., p.* 244, *sec.* 80 ; provided that any one who has a lien by mortgage or otherwise upon any land upon which the taxes have not been paid, may pay such taxes and the interest and charges thereon, and the receipt of the person authorized to receive such tax shall constitute an additional lien on the land to the amount therein specified and the interest thereon; and the amount so paid and interest thereon, shall be collectable with, as part of, and in the same manner as the amount secured by the original lien.

It also provides, (*sec.* 107,) re-enacting and amending *Rev. Stat. chap.* 102, that when any tax on real estate shall have been paid by or collected of any occupant, or tenant, or any other person, which, by assignment (agreement) or otherwise, ought to have been paid by the owner, lessor, or other party in interest, such occupant, tenant, or other person shall be entitled to recover by action the amount which the owner, lessee, or party in interest ought to have paid, with interest thereon at the rate of twelve per cent. per annum ; or he may retain the same from any rent due or accruing from same to such owner or lessee for real estate on which such tax is so paid, and the same shall until paid constitute a lien upon such real estate. The *Gen. Stat. ch.* 11, §§ 152, 153, retained these provisions, correcting, however, by the substitution of " agreement " for " assignment," the manifest clerical error in the latter of the two.

The two sections refer to and provide for distinct classes of individuals.   *Sec.* 152 provides a mode by which one who, having a lien of whatever description upon land, shall have paid taxes in arrear thereon—may reimburse himself, viz.: by collecting the amount paid and interest as a part of, at the same time, and in the same manner as the amount secured by the original lien.   *Sec.* 153 prescribes the way in which those may

reimburse themselves, who, having no such lien, have nevertheless paid the taxes, and as between whom and any other person owning or having an interest in such real estate, there was an obligation resting on such party in interest to have paid them. In this case the amount paid with twelve per cent. interest may be recovered by action.

In the case of *Spencer vs. Levering*, 8 *Minn.* 461, this court, with these statutory provisions before it, held that a mortgagee, who had collected rents and paid taxes before foreclosure, would not be entitled, if the owner brought an action against him for such rent, to offset such taxes. " It is apparent therefore that Bradford, in order to have the shadow of a claim for reimbursement for taxes paid, must have paid them before foreclosure, and in his capacity of assignee of the mortgage lien. This he could only do by virtue of the statutes above referred to and the only claim they have provided for reimbursement is by way of adding the amount so paid to the original lien and collecting it as a part thereof. He acquired thereby no personal claim against the mortgagee but must look alone to the mortgaged property for reimbursement." *P.* 466.

This is a direct decision, that the case of a mortgagee before foreclosure is not within *sec.* 153.

It may be suggested, however, that the plaintiff was in possession and therefore within *sec.* 153 as an occupant.

But it is not every occupant who is within the statute. The mere fact of occupancy will not raise the statutory liability on the part of the owner of land to reimburse such occupant the taxes thereon with 12 per cent. interest, if such occupant has seen fit to pay them.

For instance, the taxes on land are by law to be paid by March 1, in each year, and are deemed delinquent if not then paid. Yet they may be paid at any time before the day of

sale, with the addition of the few cents for advertising, if any. Is it to be supposed that because one occupies such land, he may pay the taxes on the 2d of March, and recover the amount of the owner with 12 per cent. interest ?

Yet, in one sense it may be said that this was a tax which the owner *ought* to have paid, for, as a good citizen, he ought to pay his taxes at the day appointed. He incurs no personal liability to the state, however, by letting his land go to sale. The taxes are a charge on the land merely, which land he may lose by persistent delinquency; but that is a matter between himself and his own pocket. It is not in the sense of any such *moral* obligation as that of the citizen above mentioned, that the statute uses the expression *ought to pay*. The relation between the occupant and the owner must be such as to raise an obligation as between them, on such owner's part to pay such tax.

A mortgagee out of possession before foreclosure has as we have seen no other claim for reimbursement of taxes paid by him than such as arise under *sec.* 152.·

If while defendant was in receipt of the rents and profits, the plaintiff had no other claim for reimbursement, it is difficult to see how the fact that the plaintiff had come into the receipt thereof can possibly give him any other.

It is further to be observed, moreover, that it does not appear for what, if any, part of the time plaintiff has been in personal occupation of the premises. He has been in possession; but that for a part of the time at least, he has been in possession by his tenants, is evident by the finding of the court. Any claim to 12 per cent. interest as an occupant should in any case have been based on proof of actual occupancy.

As it is not found that such occupancy existed at any specified time at which taxes were paid, it could not be known for

what time and in respect of what sums, such interest was claimed, or in any case, if in any, to be allowed.

The paper book does not state the date of the judgment appealed from, but the notice of appeal is dated August 26, 1871. The court below ordered judgment for a strict foreclosure, unless the defendant paid the amount due within one year from the date of the judgment. As the year has already expired, a simple modification of the judgment, reducing the sum found due by the difference between 12 and seven per cent. interest on the taxes paid, would not do justice. The judgment is therefore reversed, and the court below will amend its order for judgment as may be equitable and conformable hereto.